```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF NEW HAMPSHIRE
```

**United States of America**

    **v.**                                      Case No. 13-cv-213-PB
                                                                    Opinion No. 2014 DNH 176

**Scott G. Baker and Robyn Baker**


### MEMORANDUM AND ORDER

The United States sued Scott and Robyn Baker to force the sale of two parcels of land in West Campton, New Hampshire pursuant to federal tax liens that had been imposed upon Mr. Baker for nonpayment of federal income tax.  The Bakers claim that the tax liens do not encumber these properties because Mr. Baker transferred his ownership interest in them to Ms. Baker pursuant to a divorce judgment prior to the date that the tax liens arose.  The United States and Ms. Baker have each moved for summary judgment.

### I.   BACKGROUND

Robyn and Scott Baker were married on December 12, 1998. Doc. No. 26-2.  On February 23, 2000, they purchased two parcels of land in West Campton, New Hampshire as joint tenants with

rights of survivorship.  Doc. No. 19-3.  The Bakers recorded a quitclaim deed to the properties in the Grafton County Registry of Deeds the following day.  Id.

Eight years later, the Bakers filed for divorce.  Doc. No. 26-2.  On February 28, 2008, a Massachusetts state court issued a divorce judgment which became final on May 29, 2008.  Id.  The judgment approved and incorporated the Bakers' separation agreement, which the court found to be "fair and reasonable and not the product of any fraud, duress or coercion."  Id.  The agreement states in relevant part:

> The Wife shall own solely the piece of land located at Miclon Rd., Campton, New Hampshire ("Land").  Within thirty (30) days following the date of this Agreement, the Husband shall execute a deed transferring and conveying to the Wife all of his right, title and interest in and to the Land, free and clear of all existing liens.  The Husband hereby waives and releases any and all spousal rights in the Vacation Home, which he may have or acquire under the present and future laws of any jurisdiction.

Id.

On May 14, 2009, the United States assessed unpaid income taxes against Mr. Baker.  Doc. No. 19-3.  Internal Revenue Officer Patrick Dillon[1] reviewed the divorce judgment and separation agreement on October 20, 2009.  Doc. No. 26-1.  The

---

[1] A federally registered pseudonym.  Doc. No. 19-2.

United States sent a levy notice to Mr. Baker the following day, see Doc. No. 19-4, and Dillon then recorded a notice of federal tax lien for $2,458,609.02 - representing the tax assessment plus accrued interest and penalties - with the Grafton County Registry of Deeds on November 2, 2009.  Doc. No. 19-3.  On May 20, 2010, the United States assessed additional unpaid income taxes against Mr. Baker.  Id.  It sent a second levy notice to him on July 29, 2010.  Doc. No. 19-4.  On August 9, 2010, Dillon recorded a second notice of federal tax lien for $1,133,687.17 with the Grafton County Registry of Deeds.  Doc. No. 19-3.

On May 1, 2013, the United States sued the Bakers[2] seeking a judicial sale of the West Campton properties in partial satisfaction of Mr. Baker's outstanding tax liability, allegedly totaling $4,437,450.43 on the date of the complaint.  Doc. No. 1.  On May 27, 2014, Dillon verified that Mr. Baker remained liable for at least this amount and that no documents pertaining to the West Campton properties had been filed with the Grafton County Registry of Deeds since the Bakers' February 24, 2000 quitclaim deed.  Doc. No. 19-2.

---

[2] Although the tax liens are in Mr. Baker's name, the United States sued Ms. Baker pursuant to 26 U.S.C. § 7403(b) because she claims an interest in the West Campton properties.

3

The United States and Ms. Baker filed cross motions for summary judgment on May 27 and June 25, 2014.  Doc. Nos. 19, 22.  Ms. Baker claims that she owns the West Campton properties free of the tax liens because "both properties were transferred for adequate consideration to [her] pursuant to the" divorce judgment.  Doc. No. 3; see Doc. No. 23.  The United States claims that its tax liens are entitled to priority over the divorce judgment because neither the judgment nor any related deed was ever recorded.[3]  Doc. No. 19-1.

## II.  **STANDARD OF REVIEW**

Summary judgment is appropriate when the record reveals "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is considered genuine if the evidence allows a reasonable jury to resolve the point in favor of the nonmoving party, and a fact is considered material if it "is one 'that might affect the outcome of the suit under the governing law.'"  United States v. One Parcel of Real Prop. with Bldgs., 960 F.2d

---

[3] Because Mr. Baker has disclaimed any interest in the West Campton properties, he has not opposed the United States' motion insofar as it seeks the sale of these properties.  Doc. No. 25.

4

200, 204 (1st Cir. 1992) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).  In ruling on a motion for summary judgment, I examine the evidence in the light most favorable to the nonmoving party.  Navarro v. Pfizer Corp., 261 F.3d 90, 94 (1st Cir. 2001).

The party moving for summary judgment bears the initial burden of identifying the portions of the record it believes demonstrate an absence of disputed material facts.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  In determining what constitutes a material fact, "we safely can ignore 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Carroll v. Xerox Corp., 294 F.3d 231, 237 (1st Cir. 2002) (quoting Medina–Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III.  ANALYSIS

As a general matter, federal tax liens "arise at the time the assessment is made."  Drye v. United States, 528 U.S. 49, 55 n.2 (1999) (quoting 26 U.S.C. § 6322).  The United States may take "[a]ffirmative action . . . to enforce collection of [a delinquent taxpayer's] unpaid taxes" by seeking to judicially

5

foreclose upon its lien if the taxpayer "neglects or refuses to pay the same after demand."  EC Term of Years Trust v. United States, 550 U.S. 429, 430-31 (2007) (first alteration in original) (quoting 26 U.S.C. § 6321; United States v. Nat'l Bank of Commerce, 472 U.S. 713, 720 (1985)).  In the absence of contrary evidence, the Certificates of Assessments and Payments submitted by the United States here "are sufficient to establish that the IRS made valid assessments against" Mr. Baker.  See United States v. Tempelman, 111 F. Supp. 2d 85, 90-91 (D.N.H. 2000) (citing Geiselman v. United States, 961 F.2d 1, 6 (1st Cir. 1992) (per curiam)), aff'd, 12 F. App'x 18 (1st Cir. 2001).  Consequently, federal tax liens encumbered "all property and rights to property, whether real or personal, belonging to" Mr. Baker on March 14, 2009 and May 20, 2010.  See EC Term of Years Trust, 550 U.S. at 430 (quoting 26 U.S.C. § 6321).

"When the government asserts a tax lien against a taxpayer's property, the threshold inquiry is directed to the nature of the legal interest the taxpayer has in the property in question."  United States v. V & E Eng'g & Constr. Co., 819 F.2d 331, 333 (1st Cir. 1987) (citing Aquilino v. United States, 363 U.S. 509, 512 (1960)).  "To determine whether the taxpayer has a

6

sufficient legal interest in the property to satisfy this threshold inquiry, the Court must look to state law." Cramer v. Burnham, No. 91-100-S, 1994 WL 240394, at *2 (D.N.H. Jan. 22, 1994) (citing Nat'l Bank of Commerce, 472 U.S. at 722); accord V & E Eng'g, 819 F.2d at 333 (citing Aquilino, 363 U.S. at 512-13).

    The United States relies on a number of extra-jurisdictional authorities for the proposition that "a divorce decree disposing of real property is ineffective against third persons until the decree or an abstract is filed in the registry of deeds."  See In re Robinson, 38 B.R. 255, 256 (Bankr. D. Me. 1984) (applying Maine law); accord United States v. Hole, No. 75-1770-MA, 1980 WL 1555, at *1 (D. Mass. Mar. 31, 1980) (applying Massachusetts law); In re Golemo, 494 B.R. 588, 592 (Bankr. D. Mass. 2013) (same).  But in New Hampshire,[4] "the

---

[4] The parties' briefs cite both Massachusetts and New Hampshire authority without specifying which state's law applies here.  I find that New Hampshire law governs the instant motions.  See Restatement (Second) of Conflict of Laws § 223 (1971) ("Whether a conveyance transfers an interest in land and the nature of the interest transferred are determined by the law that would be applied by the courts of the situs. . . .  These courts would usually apply their own local law in determining such questions."); cf. Proctor v. Frost, 89 N.H. 304, 305-06 (1938) ("'[T]he validity of a mortgage is determined by the law of the situs of the land.'  We think that this rule is well established

undivided interest in the real estate [apportioned by a divorce judgment] vest[s] in the [grantee spouse], 'by the mere force of the decree,' 'as effectually as the same could be done by any conveyance of the [grantor spouse] himself.'" Swett v. Swett, 49 N.H. 264, 264 (1870) (quoting Whittier v. Whittier, 31 N.H. 452, 458-59 (1855)).  When a "stipulation between the parties . . . incorporated and merged into the divorce decree" "clearly and affirmatively expresse[s] their intention" to convey a real property interest, that interest vests in the grantee "on the effective date of the divorce decree."  See Mamalis v. Bornovas, 112 N.H. 423, 424, 428 (1972) (citing Swett, 49 N.H. at 264).

    The husband and wife's subsequent failure to comply with a provision of the divorce judgment – in this case, the execution and recording of a deed to the West Campton properties – will not invalidate or delay the conveyance unless the parties clearly intended for the provision to serve as a condition precedent.  See id. at 425, 428 (holding that a husband's failure to pay his ex-wife's share of the equity in their real estate as required by their divorce decree and incorporated

---

and that the effect of the [foreign] deed in question must be determined in accordance with New Hampshire law." (quoting Restatement (First) of Conflict of Laws § 225 (1934))).

separation agreement did not affect the severance of their joint tenancy on the date of the divorce).  No such intention is apparent on the face of the Bakers' separation agreement, which clearly indicates that the transfer of the West Campton properties was intended to occur upon the execution of the agreement.  See Doc. No. 26-2.

The United States nevertheless argues that the Bakers' failure to record the divorce judgment invalidates the conveyance because they failed to comply with New Hampshire Revised Statute section 477:7, which states that "[n]o . . . conveyance of real estate . . . shall be valid . . . against any person but the grantor and his heirs only, unless . . . recorded . . . ."  I disagree.

As the First Circuit observed while considering an analogous recording statute in V & E Engineering,[5] any effect

---

[5] The United States argues that V & E Engineering is distinguishable because the statute at issue there "d[id] not require that a transfer be recorded in order to be valid."  Doc. No. 28.  The problem with this argument is that it simply ignores the fact that section 477:7, like the statute at issue in V & E Engineering, makes recording a prerequisite to enforcement against third parties but does not require a transfer to be recorded to be enforceable against the grantor.  See N.H. Rev. Stat. Ann. § 477:7 ("No . . . conveyance of real estate . . . shall be valid . . . against any person but the grantor and his heirs only, unless . . . recorded . . . ."

that an unrecorded property transfer has on a subsequent bona fide purchaser or creditor has no bearing on whether a grantor retains any "rights to property" previously conveyed for purposes of 26 U.S.C. § 6321:

> The government bases its argument on the Puerto Rico recording statute . . . . [which] provides that if the same piece of real property is [conveyed] to two [grantees], the property belongs to the party who records first. The government argues that this provision means that the [grantor] of such a property retains the "right" to transfer it after he has once [conveyed] it, provided the original [grantee] has not yet recorded. . . .
> We cannot accept the government's reasoning. The Puerto Rico recording statute, like other so-called "race-notice" statutes, is designed to protect good faith purchasers who deal with sellers of property in reliance on public records of property ownership. . . . [T]hey should not be presumed to give any "right" to a [grantor] to convey the same piece of property to two [grantees]. The government[] . . . ask[s] that we construe the term "right to property" in section 6321 as referring to the possibility that the [grantor]

---

(emphasis added)); French v. Bank of N.Y. Mellon, 2011 DNH 187, 8 (citing section 477:7) ("[An] unrecorded document . . . can still be enforced against [its grantor]."), aff'd, 729 F.3d 17 (1st Cir. 2013). Thus, the reasoning in V & E Engineering applies here, and this case is distinguishable from other cases cited by the government in which the statute then at issue provided that a transfer would not be effective against anyone, including the grantor, until it was recorded. See, e.g., United States v. Hole, No. 75-1770-MA, 1980 WL 1555, at *1 (D. Mass. Mar. 31, 1980) (citing Mass. Gen. Laws ch. 209, § 3 (1980) ("[N]o . . . conveyance of real estate [between husband and wife] shall have any effect, either in passing title or otherwise, until the deed . . . [is] recorded . . . ."), amended by Mass. Gen. Laws ch. 209, § 3 (1992).

> might fraudulently convey the . . . property to an innocent third party. We cannot accept that Congress intended the term "right" to include the possibility that a party might engage in fraud. . . . [A] taxpayer, once having [conveyed] his property, no longer has a "right" to that property within the meaning of section 6321.

819 F.2d at 333.

In the present case, Mr. Baker lost his right to own, transfer, or encumber the properties when the divorce judgment became final. Section 477:7 did not give him any enforceable right to the properties as that term is used in § 6321. Thus, the properties are beyond the reach of the federal tax liens because Mr. Baker had no ownership interest in them when the liens arose. See Nat'l Bank of Commerce, 472 U.S. at 727 (section 6321 "relates to the taxpayer's rights to property and not to his creditors' rights"); United States v. Gibbons, 71 F.3d 1496, 1501 (10th Cir. 1995) ("The IRS must stand in the shoes of [Mr. Baker], who has no 'rights to property' to which the tax lien could attach in the property interest conveyed to [Ms. Baker]." (quoting § 6321)); Thomson v. United States, 66 F.3d 160, 162-63 (8th Cir. 1995) (citing V & E Eng'g, 819 F.2d at 333) (same).

11

## IV. CONCLUSION

For the reasons discussed above, I grant Ms. Baker's motion for summary judgment, Doc. No. 22, and deny the United States' motion for summary judgment, Doc. No. 19, without prejudice to it filing a new complaint to enforce its tax liens against the West Campton properties at a later date.[6]

---

[6] The United States has alleged in an action filed in the District of Massachusetts that the Bakers engaged in a sham divorce intended to shield Mr. Baker's assets, including the West Campton properties, from the federal tax liens. Doc. No. 28; see Kennedy v United States, 49 A.F.T.R. 2d (RIA) 82-742 (D.N.H. 1982) (citing 26 U.S.C. § 6321; N.H. Rev. Stat. Ann. § 545-A:4; Rice v. Snow, 116 N.H. 69 (1976)). The United States has moved for summary judgment with respect to that issue in concurrent litigation in the U.S. District Court for the District of Massachusetts, which has heard oral argument on the matter. See generally United States' Motion for Partial Summary Judgment, United States v. Baker, No. 1:13-cv-11078-RGS (D. Mass June 10, 2014). Here, the parties' respective motions note that I need not consider the validity of the Bakers' divorce or the related property division. See Doc. Nos. 19-1 ("[T]he Court need not determine the validity of the Baker's purported divorce at this time."), 23 ("[T]he United States has not alleged sham divorce or any scheme to evade payment of tax" in this proceeding). In its objection to Ms. Baker's motion, however, the United States "requests that if the Court denies [its] motion . . . the Court defer any ruling on Robyn Baker's motion until the District of Massachusetts rules on the United States' summary-judgment motion . . . ." Doc. No. 28. Rather than delaying this case indefinitely, I grant Robyn Baker's motion without prejudice to the government's right to file a new action if it succeeds on its fraudulent conveyance claim in the Massachusetts action.

SO ORDERED.

/s/Paul Barbadoro
Paul Barbadoro
United States District Judge

August 22, 2014

cc:   Michael R. Pahl, Esq.
      Jeffrey J. Cymrot, Esq.
      Anthony M. Ambriano, Esq.
      D. Sean McMahon, Esq.
      Terri L. Pastori, Esq.